**In re ALSTOM SA SECURITIES LITIGATION.**

**This document relates to all actions.**

**No. 03 Civ. 6595 (VM).**

United States District Court,
S.D. New York.

Sept. 14, 2010.

Darren J. Robbins, Milberg Weiss Bershad Hynes & Lerach LLP, Mark Solomon, Valerie L. McLaughlin, Robbins Geller Rudman & Dowd LLP, Courtland W. Creekmore, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P., San Diego, CA, Deborah Sturman, Eitan Misulovin, Gerald Harlan Silk, Victoria Odette Wilheim, Daniel Lawrence Berger, J. Erik Sandstedt, William Curtis Fredericks, Douglas M. McKeige, Jai Kamal Chandrasekhar, Bernstein, Litowitz, Berger & Grossmann, L.L.P., Jay W. Eisenhofer, Grant & Eisenhofer P.A., Sidney Stephen Liebesman, Graham, Miller, Neandross, Mullin & Roonan, L.L.C., Menachem E. Lifshitz, Bernstein Liebhard, LLP, Jeffrey Spinazzola, Andrei V. Rado, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., New York, NY, Geoffrey Coyle Jarvis, John Charles Kairis, Alessandra Phillips, Jeffrey A. Almeida, Geoffrey Coyle Jarvis, Grant & Eisenhofer, PA, Wilmington, DE, Russell David Paul, Berger & Montague, P.C., Philadelphia, PA, William S. Lerach, Keker & Van Nest, San Francisco, CA, Mark W. Carbone, Carbone & Blaydes, PLLC, Charleston, WV, David Avi Rosenfeld, Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP(LI), Melville, NY, for Plaintiffs.

George Allan Davidson, Hughes Hubbard & Reed LLP, New York, NY, for Alstom SA, Pierre Bilger, Patrick Kron, Philippe Jaffre, U.S. Pension Funds, Alstom U.S.A., Inc., Alstom Transportation, Inc., Francois Newey, James Milner, William Purves, Klaus Esser.

Gregory M. Williams, Hughes Hubbard & Reed LLP, Washington, DC, for Alstom SA, Pierre Bilger, Patrick Kron, Philippe Jaffre, U.S. Pension Funds, Alstom U.S.A., Inc., Alstom Transportation, Inc., James Milner, William Purves, Klaus Esser.

Eli Zev Freedberg, Piliero Goldstein Kogan & Miller, LLP, Michael Campion Miller, Evan Glassman, Steptoe & Johnson, LLP, New York, NY, Lenor Marquis Segal, Ellis & Winters, LLP, Raleigh, NC, for Stephan Rembaud–Measson.

David H. Kistenbroker, Pamela Gregory Smith, Katten Muchin Rosenman LLP, Chicago, IL, Julie Pechersky, Katten Muchin Rosenman, LLP, New York, NY, for Jo Janovek.

Lea Haber Kuck, Robert Emanuel Zimet, Skadden, Arps, Slate, Meagher & Flom LLP(IIA), New York, NY, for Alcatel SA.

Anthony J. Albanese, Joseph S. Allerhand, Weil, Gotshal & Manges LLP, New York, NY, for Credit Suisse First Boston, Societe Generale, BNP Paribas, Credit Agricole Indosuez Lazard Capital Markets, Morgan Stanley Dean Witter.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

On what can literally be called the eve of summary judgment, the parties present to the Court two issues more commonly addressed much earlier in litigation on a Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") mo-

tion to dismiss. The first issue, raised by defendants, is whether the securities fraud claims of the putative class in this case, including purchasers of securities on a French stock exchange, remain viable after the United States Supreme Court's decision in *Morrison v. National Australia Bank*, ––– U.S. –––, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). The second, raised by Lead Plaintiffs, is whether, pursuant to another recent Supreme Court decision, *Merck & Co. v. Reynolds*, ––– U.S. –––, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010), this Court should reconsider its ruling at the Rule 12(b)(6) stage dismissing certain claims as time-barred.

## I. *DISCUSSION*

The first complaint was filed in this case more than seven years ago on August 29, 2003. Plaintiffs allege that Alstom SA ("Alstom"), Alstom USA, Inc., Alstom Transportation Inc., Pierre Bilger, and Francois Newey, Stephan Rambeau–Measson, and Joe Janovec (collectively, "Defendants") violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("§ 10(b)" and "§ 20(a)"), 15 U.S.C. §§ 78j(b), 78t(a). Plaintiffs' allegations are detailed more fully in the Court's prior opinions in this action, *In re Alstom SA Sec. Litig.*, 406 F.Supp.2d 346 (S.D.N.Y. 2005) ("*Alstom I* "), *In re Alstom SA Sec. Litig.*, 406 F.Supp.2d 433 (S.D.N.Y.2005) ("*Alstom II* "), *In re Alstom SA Sec. Litig.*, 406 F.Supp.2d 402 (S.D.N.Y.2005) ("*Alstom III* "), *In re Alstom SA Sec. Litig.*, 454 F.Supp.2d 187 (S.D.N.Y.2006) ("*Alstom IV* "), and *In re Alstom Sec. Litig.*, 253 F.R.D. 266 (S.D.N.Y.2008). The next round of dispositive motions in this case, following the completion of several years of discovery, principally in France, are currently scheduled to be submitted in two months, on November 12, 2010.

## A. *APPLICATION OF MORRISON*

On June 24, 2010, the United States Supreme Court issued *Morrison,* which enunciated a new "transactional" rule for determining the extraterritorial application of the United States securities laws. *Morrison* held that § 10(b) applies to "*only* ... [1] the purchase or sale of a security listed on an American stock exchange, and [2] the purchase or sale of any other security in the United States." *Id.* at 2884 (emphasis added); *see also Cornwell v. Credit Suisse Group,* No. 08 Civ. 3758, 729 F.Supp.2d 620, 2010 WL 3069597 (S.D.N.Y. July 27, 2010) (holding that sales of securities listed on a foreign exchange, even if purchased by United States residents, are not actionable under § 10(b)). By memo-endorsement dated July 29, 2010, the Court directed Plaintiffs to show cause why "the claims of plaintiffs who purchased securities on foreign exchanges should not be dismissed."

Plaintiffs' response went far beyond the limited scope of the Court's direction and incongruously attempted to defend the class as a whole. Plaintiffs characterize the class as including investors who purchased Alstom securities (1) in the form of American depository receipts ("ADRs") on the New York Stock Exchange ("NYSE"), (2) directly from Alstom, and (3) on the Premier Marche of Euronext Paris ("Euronext"), a foreign stock exchange. It is only this last group that the Court now addresses.

Plaintiffs argue that purchases of Alstom securities recorded on Euronext are domestic transactions under *Morrison* because such purchases were initiated in the United States. Plaintiffs' submission to the Court, though less than a model of clarity, also suggests that because these common shares were registered and listed on the NYSE, though not actually purchased there, these Euronext transactions

fulfill the letter of *Morrison*'s rule that the federal securities fraud laws apply to transactions in securities "listed on a domestic exchange." *Morrison*, 130 S.Ct. at 2886.

█ The Court is not persuaded by either argument. In *Cornwell*, this Court rejected Plaintiffs' first contention as a general matter:

> In essence, Plaintiffs would exclude from operation of the new test transactions in securities traded only on exchanges abroad if the purchase or sale involves American parties, or if some aspects or contacts of such foreign transactions occur in the United States. But insofar as this proposition superimposes an exclusion based strictly on the American connection of the purchaser or seller, it simply amounts to a restoration of the core element of the effect test. Similarly, to carve out of the new rule a purchase or sale of securities on a foreign exchange because some acts that ultimately result in the execution of the transaction abroad take place in the United States amounts to nothing more than the reinstatement of the conduct test.

729 F.Supp.2d at 624, 2010 WL 3069597 at *3. *See also Morrison*, 130 S.Ct. at 2884 (noting that "it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States" and that "the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case") (emphasis in original).

Plaintiffs' second argument presents a selective and overly-technical reading of *Morrison* that ignores the larger point of the decision. Though isolated clauses of the opinion may be read as requiring only that a security be "listed" on a domestic exchange for its purchase anywhere in the world to be cognizable under the federal securities laws, those excerpts read in total context compel the opposite result. For example, a crucial paragraph of *Morrison* concludes that "it is in our view only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which § 10(b) applies." 130 S.Ct. at 2884. But the rest of the paragraph reveals a focus on where the securities transaction actually occurs, not the stock exchange where ministerial prepurchase activities were directed:

> Applying the same mode of analysis here, we think that the focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States. Section 10(b) does not punish deceptive conduct, but only deceptive conduct "in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered." 15 U.S.C. § 78j(b). *See SEC v. Zandford*, 535 U.S. 813, 820, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002). Those purchase-and-sale transactions are the objects of the statute's solicitude. It is those transactions that the statute seeks to "regulate," *see Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); it is parties or prospective parties to those transactions that the statute seeks to "protec[t]," *id.*, at 10, 92 S.Ct. 165. *See also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). And it is in our view only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which § 10(b) applies.

*Id.* (footnote omitted). This paragraph makes clear that the Court was concerned with the territorial location where the purchase or sale was executed and the securi-

ties exchange laws that governed the transaction. The "statute's solicitude" is directed at "transactions" and the statute seeks to "regulate" "transactions." *Id.* That the transactions themselves must occur on a domestic exchange to trigger application of § 10(b) reflects the most natural and elementary reading of *Morrison.* The Supreme Court's language about a security "listed" on a domestic exchange tracks that of the statute, which speaks of "any security registered on a national securities exchange." *See* 15 U.S.C. § 78j(b), The Court, in the paragraph excerpted above, interpreted that statute as "focus[ing] ... upon purchases and sales of securities in the United States." *Morrison,* 130 S.Ct. at 2884. Conversely, as this Court observed in *Cornwell,* § 10(b)'s focus would not encompass purchases and sales of covered securities that occur outside of the United States. *See* 729 F.Supp.2d at 625–26, 2010 WL 3069597 at *5.

Plaintiffs further contend that if foreign-exchange transactions are no longer part of this action then the Court should exercise supplemental jurisdiction over these claims and apply French law to adjudicate them. The Court, on the thin presentation made by Plaintiffs to date, is not persuaded that it should exercise supplemental jurisdiction over these claims, as doing so would essentially restart substantial portions of this seven-year old litigation. *See* 28 U.S.C. § 1367(c)(1) and (4). Reopening these claims and adjudicating them entirely under French law in this Court essentially would entail sending the parties back to the beginning of the litigation, obtaining evidence abroad potentially under a different set of rules, and deciding the merits of this aspect of the case under an entirely different, complex, and foreign code. Plaintiffs have not given any indication that the French claims were unavailable when they began this action and the Court is not now persuaded they should be allowed to press the reset button here,

particularly where, by Plaintiffs' own reckoning, France's ten-year statute of limitations allows the claims to be brought in France. *See Arista Records LLC v. Lime Group LLC,* 532 F.Supp.2d 556, 584 (S.D.N.Y.2007) (declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(4) to discourage "strategic behavior" of "bring[ing] weak federal counterclaims to take advantage of [a] boot-strapping procedure.").

Accordingly, the claims of Plaintiffs who purchased securities on foreign exchanges are dismissed from this action.

## B. *EFFECT OF MERCK & CO.*

By letter dated August 13, 2010, Plaintiffs requested reconsideration of this Court's dismissal of certain of their claims as time-barred. *See Alstom III,* at 423–29 (dismissing claims related to the "Turbine Fraud" on inquiry notice grounds). Plaintiffs' request is grounded on the Supreme Court's decision in *Merck & Co. v. Reynolds,* —— U.S. ——, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010), which considered the functioning of the statute of limitations for § 10(b) claims.

In the interests of judicial economy, the parties are directed to address *Merck & Co.'s* applicability to this case as part of their imminent dispositive motions.

## II. *ORDER*

Accordingly, it is hereby

**ORDERED** that the claims of Plaintiffs who purchased securities on foreign exchanges are dismissed from this action. **SO ORDERED.**